UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

Eastern District of Kentucky
FILED
JAN 24 2025
At Pikeville
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 7:25-CR-1-REW

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                          **PLEA AGREEMENT**

TERRY L. MELVIN                                             DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the Information, charging a violation of 18 U.S.C. § 241, conspiracy against rights, and a violation of 18 U.S.C. § 242, deprivation of rights under color of law.

2. The essential elements of Count One of the Information, 18 U.S.C. § 241, are:

    (a) A conspiracy – that is, an agreement or understanding involving two or more persons – existed;

    (b) The purpose of the agreement was to injure, oppress, threaten or intimidate a person for the purpose of interfering with a specific right secured by the Constitution or laws of the United States, specifically the right to be free from cruel and unusual punishment; and

    (c) The Defendant knowingly and voluntarily joined the conspiracy, knowing its purpose and intending to further its objective.

3. The essential elements of Count Two of the Information, 18 U.S.C. § 242, are:

    (a) The Defendant was acting under color of law;

    (b) The Defendant deprived J.B. of a right secured and protected by the Constitution and laws of the United States, specifically the right to be free from cruel and unusual punishment;

1

  (c) The Defendant acted willfully, and;

  (d) The offense resulted in bodily injury to J.B.

4. The parties agree that, as to Count One of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts are true and accurate. The following facts do not encompass all of the evidence that would have been presented had this matter gone to trial:

 (a) In 2018, the Defendant was promoted to the rank of Lieutenant at United States Penitentiary, Big Sandy ("USP Big Sandy"). USP Big Sandy was a federal prison operated by the Federal Bureau of Prisons ("BOP") and located in Inez, Kentucky, in Martin County, in the Eastern District of Kentucky. During the time that the Defendant worked as a lieutenant at USP Big Sandy, BOP staff illegally assaulting inmates was a commonplace occurrence.

 (b) In November 2019, E.E. began working as Associate Warden at USP Big Sandy, and in June 2020, M.D. was promoted to Captain there. Under BOP policy, if an inmate requested protective custody, the staff were to place the inmates in the Special Housing Unit ("SHU") as the potential threats against them were investigated. Nevertheless, when M.D. and E.E. took charge, they conspired, along with other Big Sandy senior staff, to use unconstitutional force against inmates who were requesting protective custody through an "unofficial" policy. They relayed this unofficial policy to Big Sandy lieutenants and senior staff, including the Defendant, at a meeting in early 2021.

 (c) Prior to the meeting, the SHU had become full, which required housing units to lock down. During the meeting, Captain M.D. and Associate Warden E.E. instructed the lieutenants and senior staff to deal with all requests for protective custody in the same illegal manner, with the goal of reducing the SHU occupancy numbers. Captain M.D. And Associate Warden E.E. instructed the senior staff that they were to give inmates the option of either withdrawing their protective custody request or pretending to assault staff in the lieutenants' office and be subject to an illegal use of force upon them ("swing or kick rocks" in the words of Associated Warden E.E. and Captain M.D.). If the inmate withdrew the request, this meant they would be returned to their housing unit rather than taking up a spot in the SHU ("kick rocks"). If the inmate refused to withdraw their request, as part of the conspiracy, after which staff would illegally assault the inmates and falsely claim in paperwork that the inmate had assaulted them ("swung" at them). As a result of this false

claim of assault on staff, per standard BOP procedure these inmates would then be moved to other BOP institutions and thus reduce the SHU population. Associate Warden E.E. explained that an investigation to validate a threat requiring protective custody could take an extended amount of time, and he told the lieutenants that his and M.D.'s unofficial policy was also the unofficial policy in other institutions where E.E. had worked.

(d) USP Big Sandy senior staff participated in the conspiracy spearheaded by Captain M.D. and Associate Warden E.E., including the Defendant as well as Lieutenant M.C., Case Management Coordinator Samuel Patrick, Captain's Secretary Clinton Pauley, Lieutenant Kevin Pearce, and Lieutenant Ryan Elliott.

(e) Once per week, new USP Big Sandy inmates were released from a particular unit, C-4 Unit. Many inmates being released from C-4 Unit requested protective custody. The day of the week on which inmates were released from C-4 Unit became known as "staff assault day."

(f) The Defendant observed other lieutenants and senior staff assault inmates and aid and abet assaults of inmates, including BOP employees M.C., Kevin Pearce, Samuel Patrick, Clinton Pauley, L.C., C.M., D.B., E.T., P.P., and L.M., as well as correctional officers D.A., S.H., and J.P. The Defendant himself willfully used unreasonable force on inmates on numerous occasions. Lieutenants and senior staff, including the Defendant, often told inmates "stop resisting, stop resisting," during assaults, despite knowing that the inmate was not resisting. The Defendant was also aware that on April 29, 2021, inmate C.T. requested protective custody and was assaulted in furtherance of this conspiracy by Samuel Patrick and Clinton Pauley in Kevin Pearce's presence.

(g) Captain M.D. and Associate Warden E.E. assigned members of the Special Investigations Section ("SIS") to help cover up acts of staff misconduct committed in furtherance of this conspiracy. The Defendant heard E.E. instruct someone in SIS on multiple occasions to "clean this shit up" and to "go squash" incidents involving unreasonable force by correctional staff. SIS members sometimes used the Defendant's office to interview inmates, and the Defendant heard one SIS employee ask inmates, "What's it going to take to make this go away?" On one occasion in the Defendant's office, the same SIS employee told the Defendant that he had "staticked" (i.e., turned to static) video evidence capturing officer misconduct by using a large speaker to distort the evidence. Following the assault of inmate C.T. by staff on April 29, 2021, the Defendant observed the inmate's injuries and informed Captain M.D. that the inmate's injuries looked bad. Captain M.D. questioned the Defendant. Afterward, the SIS employee told the Defendant that Captain M.D. and Associate Warden E.E. sent him to try to cover up the assault of inmate C.T.

(h) Captain M.D. often changed the language that correctional staff used in their written incident descriptions to further the conspiracy and make it look like the inmates

3

resisted or took actions that never actually happened. For example, Captain M.D.—who was not present for most incidents themselves—would delete phrases like the inmate "appeared to become aggressive," and replaced the phrase with "became aggressive," and on one occasion deleted the Defendant's description that an inmate "turned aggressively," and instead inserted that the inmate "struck staff with left hand," none of which was true.

(i) The Defendant knew that participating in this conspiracy was wrong, but he and other lieutenants received promotions in order to go along with it. In approximately October 2021, the Defendant and other lieutenants received monetary rewards of approximately $6,000-$8,000, at the direction of Captain M.D. The Defendant's understanding was that he was receiving the award because he participated in the above-described scheme.

5. As to Count Two of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts are true and accurate. The following facts do not encompass all of the evidence that would have been presented had this matter gone to trial:

(a) On April 13, 2021, the Defendant was on duty and acting in his official capacity as a lieutenant at USP Big Sandy.

(b) J.B., an inmate who had requested protective custody, was brought into the lieutenants' office, where there were no security cameras. Also present in the office were other senior Big Sandy staff, including M.C., Case Management Coordinator Samuel Patrick, Captain's Secretary Clinton Pauley, and Lieutenant Kevin Pearce.

(c) As J.B. pleaded for protective custody, the Defendant commented that he was "tired of this," and that if J.B. had done what he was convicted for to the Defendant's family, J.B. would not be standing there. J.B. continued to plead his case to the Defendant, and the Defendant asked J.B., "Have you met Lieutenant [M.C.]?" J.B. turned to Lieutenant M.C., and Lieutenant M.C. punched J.B. in the face with a closed fist. The Captain's Secretary, Clinton Pauley and Samuel Patrick grabbed J.B. and pressed him against the wall; the Defendant punched J.B. with a closed fist; M.C. punched with a closed fist and kicked J.B. approximately 4-5 times in the stomach and face; Clinton Pauley punched J.B. approximately 4-5 times with a closed fist; Samuel Patrick punched J.B. approximately 1-2 times with a closed fist; and Kevin Pearce kicked J.B. in the stomach. Although he knew that J.B. was unresisting and that there was no lawful reason to use force on him, the Defendant repeatedly said "stop resisting" as he watched the other lieutenants assault J.B. The Defendant's statements and behavior during the incident aligned with his

participation in the conspiracy charged in Count One.

(d) After the assault, the Defendant and other lieutenants stood J.B. up to take photographs, Kevin Pearce stated, "Get a picture before his face swells up," and held J.B. against a wall for the photograph. The Defendant and other lieutenants alleged that J.B. had assaulted Lieutenant M.C., which was not true. As a result of the assault, J.B. suffered from extensive bruising, facial lacerations, a concussion, and rib pain, all of which the Defendant admits constituted serious bodily injury. J.B. was hospitalized as a result of the assault by the Defendant and other BOP staff.

6. The statutory punishment for each count of the information is imprisonment for not more than ten years, a fine of not more than $250,000.00, and a term of supervised release of not more than three years. A mandatory special assessment of $100.00 for each count applies, and the Defendant will pay this $200 assessment to the U.S. District Court Clerk at the time of sentencing.

7. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations. This recommendation does not bind the Court.

    Count One

    (a) The United States Sentencing Guidelines (U.S.S.G.) in effect at the time of sentencing will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 2H1.1(a)(3), the base offense level is the greatest between the offense guideline applicable to the underlying offense or level 12 because the offense involved two or more participants.

    (c) Pursuant to U.S.S.G. § 2H1.1(b)(1) (color of law), increase the offense level by 6 levels.

    (d) Pursuant to U.S.S.G. § 3A1.1(b)(1) and (2), increase the offense level by 4 levels because the defendant knew or should have known that the victims of the offenses were vulnerable victims and the offense involved a large number of vulnerable victims.

(e) Pursuant to U.S.S.G. § 3B1.1(c), increase the offense level by 3 levels because the defendant was a manager or supervisor, the criminal activity involved five or more participants, and the criminal activity was otherwise extensive.

(f) Pursuant to U.S.S.G. § 3C1.1, increase the offense level by 2 levels because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation or prosecution of the conduct described in Count One of the information.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

Count Two

(a) The United States Sentencing Guidelines (U.S.S.G.) in effect at the time of sentencing will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2H1.1(a)(3), the base offense level is the greatest between the offense guideline applicable to the underlying offense or level 12. Because the victim suffered serious bodily injury as a result of the defendant's relevant conduct, the underlying offense constitutes aggravated assault and cross-references to U.S.S.G. § 2A2.2.

(c) Pursuant to U.S.S.G. § 2A2.2(a), the base offense level is 14.

(d) Pursuant to U.S.S.G. § 2A2.2(b)(3)(B), increase the offense level by 5 points because the victim suffered serious bodily injury.

(e) Pursuant to U.S.S.G. § 2H1.1(b)(1) (color of law), increase the offense level by 6 levels.

(f) Pursuant to U.S.S.G. § 3C1.1, increase the offense level by 2 levels because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the

*TM*
*JLC*

investigation or prosecution of the conduct described in the sole count of the information.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

Combined Offense Level

(a) Pursuant to U.S.S.G. § 3D1.2(d), the offenses in Count One and Two are excluded from grouping because they fall under U.S.S.G. § 2H1.1, and each are treated as different groups.

(b) Pursuant to U.S.S.G. § 3D1.4(a), Count One counts as 1 unit. Because Count Two is equally as serious at Count One, it counts as 1 additional unit pursuant to U.S.S.G. § 3D1.4(a), leading to a total of 2 units.

(c) Pursuant to U.S.S.G. § 3D1.4, because there is a total of 2 units, add 2 offense levels.

8.  No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

9.  The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

10. The Defendant waives the right to appeal the guilty plea, conviction, and sentence, with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea,

conviction, and sentence.

11. The Defendant, upon signing this Plea Agreement, knowingly, voluntarily, and expressly waives his rights pursuant to Rule 410(a) of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. The Defendant understands and agrees that in the event that he violates the Plea Agreement, withdraws his decision to plead guilty, or causes his guilty plea to be later withdrawn or otherwise set aside, any statements he made to law enforcement or to an attorney for the prosecuting authority during plea discussions, and any statements he made during any court proceeding involving his plea of guilty (including any factual bases or summaries, such as those set forth in Paragraphs 4 and 5 of this Plea Agreement), shall be admissible for all purposes against the Defendant in any and all future criminal proceedings. The Defendant waives all claims under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the Defendant's statements pursuant to this Plea Agreement, or any leads derived from such statements, should be suppressed or are inadmissible.

12. The United States will recommend releasing the Defendant under appropriate conditions of release for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the

*TM*
*JLC*

United States Attorney for the Eastern District of Kentucky, the Criminal Section of the Civil Rights Division, and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 1/24/25    By: _____
Zach Dembo
Assistant United States Attorney

KRISTEN M. CLARKE
ASSISTANT ATTORNEY GENERAL
Civil Rights Division

Date: 1-24-25    By: _____
Tara Allison
Trial Attorney

Date: 1-24-25    _____
Terry Melvin
Defendant

Date: 1-24-25

_____
Jeremy Clark
Attorney for Defendant